**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS ESTLER, BLAKE RUEHRWEIN, and STEVEN PARK, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

DUNKIN BRANDS INC., DUNKIN' DONUTS STORE #350125, DUNKIN' DONUTS STORE #350126, DUNKIN' DONUTS STORE #350127, DUNKIN' DONUTS STORE #345768, and JOHN DOES 1-500,

Defendants.

CIVIL NO.: 1:16-cv-00932-LGS
Judge Lorna G. Schofield

**DEFENDANT DUNKIN' BRANDS, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

Ronald D. Degen
O'ROURKE & DEGEN, PLCC
225 Broadway
Suite 715
New York, NY 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813
rdegen@odlegal.com

Eric L. Yaffe (*pro hac vice*)
Virginia E. Davis Horton (*pro hac vice*)
Whitney A. Fore (*pro hac vice*)
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
Suite 700 – The Watergate
600 New Hampshire Avenue, NW
Washington, DC 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
eric.yaffe@gpmlaw.com
virginia.horton@gpmlaw.com
whitney.fore@gpmlaw.com

*Attorneys for Defendant Dunkin' Brands, Inc.*

**TABLE OF CONTENTS**

**Page**

BACKGROUND FACTS ..... 2

ARGUMENT ..... 3

I. PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR FAILURE TO EXHAUST THEIR EXCLUSIVE ADMINISTRATIVE REMEDIES ..... 3

A. New York Tax Law § 1139 Sets Forth the Exclusive Remedy for Sales Tax Refunds ..... 3

B. Plaintiffs' Purported Class Action Is a Disguised Request for a Sales Tax Refund ..... 8

II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM WITH RESPECT TO DUNKIN' UPON WHICH RELIEF CAN BE GRANTED ..... 9

A. The Allegations that Dunkin' Sets Prices Are Directly Contradicted by Material Referred to in the Complaint ..... 9

B. Plaintiffs' Allegations that Dunkin' Sets Prices Are Conclusory Under Iqbal and Twombly ..... 12

C. Plaintiffs Fail to State a Claim Pursuant to N.Y. General Business Law § 349 ..... 13

D. Plaintiffs' Claim for Breach of Contract Fails to State a Claim ..... 15

E. Plaintiffs' Equitable Claim for Unjust Enrichment Fails ..... 17

F. Plaintiffs' Claim for Negligence Fails ..... 19

G. The Economic Loss Doctrine Bars Plaintiffs' Claims for Fraud and Negligence ..... 21

H. Plaintiffs Fail to Allege Fraud with Particularity ..... 22

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Tishman Construction Corp.*,
750 N.E.2d 1097 (N.Y. 2001)....................20

*Matter of 550 Cent. Ave. Deli Corp. v. Comm'r of Taxation and Fin.*,
188 A.D. 2d 845 (N.Y. App. Div. 3d Dep't. 1992) ....................6

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995)....................24

*Am. Tel. & Tel. Co. v. N.Y.C. Human Res. Admin.*,
833 F. Supp. 962 (S.D.N.Y. 1993) ....................22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................13

*Ashland Cty. Bd. of Commrs. v. Ohio Dep't of Taxation*,
590 N.E.2d 730 (Ohio 1992)....................8

*Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC*,
888 F. Supp. 2d 508 (S.D.N.Y. 2012)....................21

*Baron v. Pfizer, Inc.*,
42 A.D.3d 627 (N.Y. App. Div. 3d Dep't 2007) ....................15

*Bastek v. Fed. Crop Ins. Corp.*,
145 F.3d 90 (2d Cir. 1998)....................5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................13

*Carson v. Weiss*,
333 Ark. 561 (1998)....................8

*Clark–Fitzpatrick, Inc. v. Long Island R.R.*,
516 N.E.2d 190 (N.Y. 1987)....................18

*Cnty. of Suffolk v. Long Island Lighting Co.*,
728 F.2d 52 (2d Cir. 1984)....................22

*Cohen v. Hertz Corp.*,
No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013) .................... *passim*

*Commer v. American Federation of State, County, & Municipal Employees*,
272 F. Supp. 2d 332 (S.D.N.Y. 2003)....................10

*Davidson v. Rochester Tel. Corp.*,
558 N.Y.S.2d 1009 (N.Y. App. Div. 3d Dep't 1990)....................6, 7

*Dinberg v. Arthur Murray, Inc.*,
39 A.D.2d 622 (N.Y. App. Div. 3d Dep't 1972)....................17

*Eaves v. Designs for Finance, Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011)....................25

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004)....................23

*Fairbank Farms, Inc. v. Kasza*,
69 A.D. 2d 1001 (N.Y. App. Div. 4th Dep't 1979)....................7

*Gilbert v. Home Depot, Inc.*,
No. 13-cv-853S, 2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014)....................6, 7, 9

*In re Griffin*,
Bankr. No. 10-22431-RDD, 2010 WL 3928610 (Bankr. S.D.N.Y. Aug. 31, 2010)....................17

*Harsco v. Segui*,
91 F.3d 337 (2d Cir. 1996)....................23

*J&L Am. Enterprises, Ltd. v. DSA Direct, LLC*,
No. 401937/05, 2006 WL 216680 (N.Y. Sup. Ct. Jan. 27, 2006)....................16

*Jones v. Bank of Am. Nat'l Ass'n*,
No. 31990/2008, 2013 WL 4017344 (N.Y. Sup. Ct. July 29, 2013)....................23

*Lama Holding Co. v. Smith Barney Inc.*,
668 N.E.2d 1370 (N.Y. 1996)....................23

*Legal Aid Society v. City of New York*,
114 F. Supp. 2d 204 (S.D.N.Y. 2000)....................3, 7

*Lightfoot v. Union Carbide Corp.*,
110 F.3d 898 (2d Cir. 1997)....................18

*Lombard v. Booz-Allen & Hamilton, Inc.*,
280 F.3d 209 (2d Cir. 2002)....................19

*M. Parpis Food Distribs. Inc. v. Wetzler*,
202 A.D. 2d 873 (N.Y. App. Div. 3d Dep't 1994)....................7

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................................................................................4

*Marcella & Co. v. Avon Products, Inc.*,
282 A.D.2d 718 (N.Y. App. Div. 2d Dep't 2001) ..........................................................12, 17

*Matthew v. RCN Corp.*,
No. 12 Civ. 0185, 2012 WL 5834917 (S.D.N.Y. Nov. 14, 2012) ............................................9

*Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.)*,
585 F.3d 677 (2d Cir. 2009)....................................................................................25

*In re Merrill Lynch & Co. Research Reports Secs. Litigation*,
289 F. Supp. 2d 429 (S.D.N.Y. 2003)........................................................................11

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008)....................................................................................4

*New World Trading Co. v. Avshalomov*,
No. 11 Civ. 6219, 2012 WL 4378055 (S.D.N.Y. Sept. 24, 2012) ..........................................23

*Oda v. State*,
44 P.3d 8 (Wash. Ct. App. 2002)...............................................................................8

*Orlander v. Staples, Inc.*,
802 F.3d 289 (2d Cir. 2015)....................................................................................15

*Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*,
83 A.D.3d 804 (N.Y. App. Div. 2d Dep't 2011) ..........................................................16

*Pani v. Empire Blue Cross Blue Shield*,
152 F.3d 67 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999) ..........................................10

*Patmos Fifth Real Estate Inc. v. Mazl Bldg. LLC*,
No. 108421/11, 2013 WL 3942115 (N.Y. Sup. Ct. July 29, 2013) .......................................16

*Pelman v. McDonald's Corp.*,
272 F.R.D. 82 (S.D.N.Y. 2010) ................................................................................15

*Preira v. Bancorp Bank*,
885 F. Supp. 2d 672 (S.D.N.Y. 2012)........................................................................15

*Rheem Mfg. Co. v. Ala. Dep't of Revenue*,
33 So. 3d 1 (Ala. Civ. App. 2009) .............................................................................8

*Richstone v. Everbank Reverse Mortg. LLC*,
No. 106444/08, 2009 WL 6303024 (N.Y. Sup. Ct. July 8, 2009) .........................................17

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)....................10

*S.E.C. v. Lee*,
720 F. Supp. 2d 305 (S.D.N.Y. 2010)....................25

*Matter of Saltzman v. N.Y. State Tax Comm'n*,
101 A.D.2d 910 (N.Y. App. Div. 3d Dep't 1984) ....................21

*Shred-It USA Inc. v. Mobile Data Shred*,
222 F. Supp. 2d 376 (S.D.N.Y. 2002)....................22

*Small v. Lorillard Tobacco Co.*,
720 N.E.2d 892 (N.Y. 1999)....................14

*Sotheby's, Inc. v. Minor*,
No. 08 Civ. 7694(BSJ), 2009 WL 3444887 (S.D.N.Y. Oct. 26, 2009) ....................21

*Stutman v. Chem. Bank*,
731 N.E.2d 608 (N.Y. 2000)....................14

*Totten v. Saionz*,
38 A.D.2d 630 (N.Y. App. Div. 3d Dep't 1971) ....................17

*Valentini v. Citigroup, Inc.*,
837 F. Supp. 2d 304 (S.D.N.Y. 2011)....................24

*Van Brunt v. Rauschenberg*,
799 F. Supp. 1467 (S.D.N.Y. 1992)....................18

*Violette v. Armonk Associates, L.P.*,
872 F. Supp. 1279 (S.D.N.Y. 1995)....................18

*W. T. Wang, Inc. v. N.Y. State Dep't of Taxation & Fin.*,
88 A.D. 2d 825 (N.Y. App. Div. 1st Dep't 1982)....................6

*Weisblum v. Prophase Labs, Inc.*,
88 F. Supp. 3d 283, 286, 292-93 (S.D.N.Y. 2015) ....................15

*Wu v. Dunkin' Donuts, Inc.*,
105 F. Supp. 2d 83 (E.D.N.Y. 2000) ....................21

*Yucyco, Ltd. v. Republic of Slovenia*,
984 F. Supp. 209 (S.D.N.Y. 1997) ....................17

**Statutes**

72 Pa. Cons. Stat. Ann. § 7253 ....................8

26 U.S.C. § 7422(a), (f)(1)....................................................................................................8

Ala. Code § 40-2A-77(c) ..........................................................................................................8

Ariz. Rev. Stat. Ann. §§ 42-118(e) ...........................................................................................8

Ark. Code Ann. § 26-18-507(e)(2)(A).......................................................................................8

Cal. Rev. & Tax Code § 6932...................................................................................................8

Haw. Rev. Stat. Ann. § 237-37 .................................................................................................8

Kan. Stat. Ann. §§ 79-3693(c)...................................................................................................8

Mass. Gen. Laws Ann. Ch. 62C §§36........................................................................................8

N.C. Gen. Stat. Ann. § 105-164.11 ...........................................................................................8

N.M. Stat. Ann. §§ 7-1-22 .........................................................................................................8

N.Y. Gen. Bus. Law § 394-d (McKinney 1984).....................................................................17

N.Y. Tax Law § 1139 ....................................................................................................... *passim*

N.Y. Tax Law §§ 1139-40 ................................................................................................ *passim*

N.Y. Tax Law § 2016 .................................................................................................................5

Nev. Rev. Stat. Ann. §§372.630(1)............................................................................................8

New York General Business Law § 349 ............................................................................ *passim*

New York Tax Laws ..................................................................................................................1

Ohio Rev. Code Ann. § 5739.07 ...............................................................................................8

S.C. Code Ann. §§ 12-60-80(A) ...............................................................................................8

S.D. Cod. Laws § 10-59-17 .......................................................................................................8

Tax Law article 28 ......................................................................................................................7

Tax Law §§ 1138 and 1139 ........................................................................................................7

Tax Law §§ 1138, 1139 and 1140 ..............................................................................................7

Tenn. Code Ann. §§ 67-1-1801, 67-1-1804..............................................................................8

Utah Code Ann. § 63G-3-602....................................................................................................8

W. Va. Code Ann. § 11-10-14 ....................8

Wash. Rev. Code Ann. § 82.32.180 ....................8

**Other Authorities**

E. Allen Farnsworth, *Contracts* § 2.20 (2d Ed. 1990) ....................18

Federal Rule of Civil Procedure 9(b) ....................23, 24

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ....................1, 2, 3, 4

Ohio Admin. Code §5703-9-07(B) ....................8

Rule 9(b) ....................24

Rule 12(b)(6) ....................1, 2

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendant Dunkin' Brands, Inc. ("Dunkin'") moves to dismiss Plaintiffs' claims in their entirety. Plaintiffs seek, essentially, a sales tax refund from four Dunkin' Donuts franchisees by alleging that those franchisees (and potentially other Dunkin' franchisees) improperly charged them an 89 cent sales tax on each of several purchases of prepackaged coffee. Under the New York Tax Laws, such a claim for a tax refund can only be brought against the New York Department of Taxation; therefore, pursuant to Federal Rule of Civil Procedure 12(b)(1), this Court lacks jurisdiction to hear this matter.[1]

Further, even if their claims did not lie exclusively with the Tax Commission, Plaintiffs have failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have not pled a single fact to show a plausible claim against Dunkin', the franchisor of the Dunkin' Donuts system, as opposed to any claims they may allege against individual Dunkin' Donuts franchises ("the Franchise Defendants"), all of which are independently owned and operated. As a threshold matter, Dunkin' did not conduct and was not involved in any manner in the sales transactions at issue or, more particularly, in the assessment of the sales taxes at issue in this case. Dunkin' does not set or assess any taxes on its franchisees' sales, collect any of those taxes, or remit those sales taxes to state authorities—its franchisees do—and Plaintiffs have failed to adequately plead otherwise. Dunkin' is the target of Plaintiffs' factually-unsubstantiated theory that it had, in some unspecified manner, involvement in the setting and assessment of the

[1] Dunkin' believes that Plaintiffs' failure to exhaust their (exclusive) administrative remedies is a jurisdictional issue properly framed under Rule 12(b)(1). Accordingly, Dunkin' proceeds under Rule 12(b)(1) for this claim, and alternatively, Dunkin' moves under Rule 12(b)(6). Regardless, as discussed further herein, this matter belongs, if anywhere, before the Tax Commission, irrespective of which rule of federal civil procedure applies.

instant taxes. Plaintiffs have failed to plead facts that could possibly make Dunkin' an appropriate party to this case, and all claims against Dunkin' should be dismissed.

Finally, Plaintiffs' claims lack factual or legal support. Plaintiffs fail to allege their claim for fraud with particularity, fail to state a claim under New York General Business Law § 349, fail to allege any duty breached by Dunkin' to support their claims for negligence, and fail to state a claim for breach of contract or unjust enrichment. Therefore, Dunkin' respectfully requests that this Court dismiss Plaintiffs' claims in their entirety under Federal Rule of Civil Procedure 12(b)(1) and/or Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND FACTS

Dunkin' is engaged in the business of franchising independent businesspersons to operate Dunkin' Donuts shops throughout the United States. Dunkin' franchisees, such as the Franchise Defendants, are licensed to use Dunkin's trademarks and related intellectual property to independently own and operate their businesses in exchange for royalty payments based on a percentage of gross sales. (By definition, the gross sales used to calculate royalty fees excludes sale taxes. Ex. 1, Franchise Agreement (PC# 350125, 350126, 350127) ¶ 5.5. [2]; Ex. 2, Franchise Agreement (PC #345768) ¶ G.) [3] While Dunkin' sometimes promotes special pricing for specific limited-time offers, Dunkin' franchisees otherwise set their own prices. Ex. 1, Franchise Agreement (PC# 350125, 350126, 350127) ¶ 7.3. Under the terms of Dunkin's franchise agreements, all franchisees are responsible for complying with all state and local laws, including those related to sales taxes, and there is no fiduciary relationship between Dunkin' and its

[2] Franchise agreements 350125, 350126, and 350127 are identical, while 345768 differs but not materially so.

[3] As discussed in more detail below, the Court can consider the Franchise Agreements without converting this motion to a motion for summary judgment because the Plaintiffs refer to the Franchise Agreements in their Complaint. *See* Compl. (ECF 3) ¶¶ 30-31; *Cohen v. Hertz Corp.*, No. 13 Civ. 1205, 2013 WL 9450421, at *3 (S.D.N.Y. Nov. 26, 2013).

franchisees. Ex. 1, Franchise Agreement (PC # 350125, 350126, 350127) ¶¶ 7.1, 16.1; Ex. 2, Franchise Agreement (PC # 345768) ¶¶ 5.1.7, 12.0.

## ARGUMENT

Plaintiffs' Complaint must be dismissed for failure to exhaust their administrative remedies, as required by N.Y. Tax Law §§ 1139-40. Because the Tax Law provides an exclusive administrative remedy for Plaintiffs, this Court lacks jurisdiction to hear this matter. Fed. R. Civ. P. 12(b)(1).

### I. Plaintiffs' Complaint Must Be Dismissed for Failure to Exhaust Their Exclusive Administrative Remedies

Plaintiffs allege that the Franchise Defendants (the franchisees) overcharged them by charging a sales tax on prepackaged coffee. Prepackaged coffee is considered a grocery item, and thus is not subject to sales tax in New York. Compl. (ECF 3) ¶ 32. Each Plaintiff was allegedly overcharged 89 cents per purchase. *Id*. ¶¶ 39-48.

What is perhaps more significant than what Plaintiffs have alleged, however, is what they have *not* alleged. Specifically, they fail to allege that they sought a refund through the administrative procedures set forth in N.Y. Tax Law § 1139. Under N.Y. Tax Law § 1140 and the precedent of numerous New York state and federal courts, the remedies set forth in § 1139 are the exclusive remedies available to Plaintiffs.[4] Their failure to avail themselves of these administrative remedies is fatal to their claims.

#### A. New York Tax Law § 1139 Sets Forth the Exclusive Remedy for Sales Tax Refunds

[4] Exhaustion of remedies is an affirmative defense provided by state law. As it applies to this litigation, exhaustion of remedies is governed by state substantive law and federal procedural law. *See Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000) (citing *Baker v. Coughlin*, 77 F.3d 12, 14 (2d Cir. 1996)).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 130 S. Ct. 2869 (2010). Because Plaintiffs have failed to exhaust their administrative remedies, as required by New York Tax Law §§ 1139-40, this Court does not have jurisdiction to hear this case.

New York Tax Law § 1139 provides the procedure for a taxpayer to seek a refund of a sales tax that the taxpayer believes was collected erroneously or illegally.

> (a) In the manner provided in this section the tax commission shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if application therefor shall be filed with the tax commission (i) in the case of tax paid by the applicant to a person required to collect tax, within three years after the date when the tax was payable by such person to the tax commission. …
> (b) If an application for refund or credit is filed with the commissioner of taxation and finance as provided in subdivision (a) of this section, the commissioner of taxation and finance shall grant or deny such application in whole or in part within six months of receipt of the application in a form which is able to be processed and shall notify such applicant by mail accordingly. Such determination shall be final and irrevocable unless such applicant shall, within ninety days after the mailing of notice of such determination, petition the division of tax appeals for a hearing. After such hearing, the division of tax appeals shall mail notice of the determination of the administrative law judge to such applicant and to the commissioner of taxation and finance. Such determination may be reviewed by the tax appeals tribunal as provided in article forty of this chapter. The decision of the tax appeals tribunal may be reviewed as provided in section two thousand sixteen of this chapter.[5]

N.Y. Tax Law § 1139.

---

[5] N.Y. Tax Law § 2016 provides for judicial review of a final administrative determination by way of an Article 78 proceeding.

N.Y. Tax Law § 1140 affirmatively establishes that the procedure set forth in § 1139 is the only remedy available to a customer who believes he has been charged a sales tax improperly.

> The remedies provided by §§ 1138 and 1139 *shall be exclusive remedies available* to any person for the review of tax liability imposed by this article; and no determination or proposed determination of tax or determination on any application for refund shall be enjoined or reviewed by an action for declaratory judgment, an action for money had and received, or by an action or proceeding other than a proceeding under article 78 of the civil practice law and rules.

N.Y. Tax Law § 1140 (emphasis added).

The Second Circuit has held that "[s]tatutory exhaustion requirements are mandatory, and courts are not free to dispense with them." *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998). New York courts have consistently enforced the exclusive remedies provision of § 1140. For example, in *Cohen v. Hertz Corp.*, No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013), the plaintiff brought a putative class action alleging that Hertz Rental Cars had illegally collected sales taxes by charging sales taxes based on a pre-discount subtotal rather than a lower post-discount subtotal. Similar to the Plaintiffs in this case, the plaintiff filed claims in federal court for violation of N.Y. General Business Law § 349, breach of contract, negligence, and other related claims. *Id*. at *1. The District Court for the Southern District of New York dismissed all of the plaintiff's claims because it found that "under New York law, Hertz's collection of the sales tax constitutes 'merely a ministerial act.' Since Hertz is merely a tax collector and its responsibility ends once it has collected the taxes, 'a dissatisfied taxpayer's recourse is then against the taxing body." *Id*. at *3 (quoting *Davidson v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009, 1011 (N.Y. App. Div. 3d Dep't 1990). Because § 1139 provides an exclusive administrative remedy for a dissatisfied taxpayer, the court found that it lacked jurisdiction to hear any of the plaintiff's claims based on the alleged tax overcharge. *Id*.

Similarly, in *Gilbert v. Home Depot, Inc.*, No. 13-cv-853S, 2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014), a plaintiff representing a putative class alleged that Home Depot illegally charged state and local sales taxes on a damage protection plan under its tool rental agreements. Similar to the Plaintiffs in the instant case, he alleged that this constituted a violation of N.Y. General Business Law § 349, breach of contract, negligence, fraud, and other related claims. *Id.* at *1. The District Court dismissed all claims because it found that "the question of whether a vendor is collecting and remitting sales taxes in accordance with state law is a question that has been entrusted to the Department of Taxation in the first instance." *Id.* at *4. The court further found that while the statute provides an exception for a suit against the state taxation agencies where an agency's action is challenged as either unconstitutional or wholly beyond its grant of power, the statute does not provide an exception allowing for an action against a non-agency private entity. *Id.* at *3.

New York courts have reached similar results in numerous cases. *See W. T. Wang, Inc. v. N.Y. State Dep't of Taxation & Fin.*, 88 A.D. 2d 825, 826 (N.Y. App. Div. 1st Dep't 1982) (dismissing taxpayer's claims because plaintiff had failed to exhaust its administrative remedies under §§ 1139 and 1140 of the tax law); *Davidson v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009, 1011 (N.Y. App. Div. 3d Dep't 1990) ("Plaintiff has no cause of action against [retailer] …. Claim against State for recovery of taxes must be preceded by exhaustion of administrative remedies"); *Matter of 550 Cent. Ave. Deli Corp. v. Comm'r of Taxation and Fin.*, 188 A.D. 2d 845, 846 (N.Y. App. Div. 3d Dep't. 1992) ("[T]he Legislature has set forth in unambiguous terms the parameters for seeking refunds of sales and use taxes in Tax Law §§ 1138, 1139 and 1140 …. These provisions reflect a clear legislative intent to narrow the opportunity for administrative and court review, and further the important public policy that demands that

challenges to State revenue practices be raised promptly and pursued diligently to protect the integrity of the public fisc."); *M. Parpis Food Distribs. Inc. v. Wetzler*, 202 A.D. 2d 873, 875 (N.Y. App. Div. 3d Dep't 1994) ("Tax Law § 1140 provides that the remedies provided under Tax Law §§ 1138 and 1139 are the exclusive remedies available for the review of tax liability imposed by Tax Law article 28; because [plaintiff] did not avail itself of this exclusive remedy, it has failed to exhaust its administrative remedies and is therefore precluded from maintaining this proceeding."); *Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 2000) ("Pursuant to New York law, exhaustion of administrative remedies is generally required prior to the initiation of litigation in the interest of preventing premature judicial interference with administrative efforts to develop a coherent enforcement scheme as well as to develop a factual record in the particular case."); *Fairbank Farms, Inc. v. Kasza*, 69 A.D. 2d 1001, 1002 (N.Y. App. Div. 4th Dep't 1979) ("Petitioners-respondents do not challenge the taxing authority's jurisdiction on the ground that the statute is unconstitutional or inapplicable; therefore, they must comply with the method of review prescribed in the Tax Law.").

In several of these cases, New York courts have held that a class action lawsuit is not available to a putative class desiring to sue a retailer for alleged overcharges of sales tax or an improper charge in place of a sales tax. *See Gilbert v. Home Depot, Inc.*, No. 13-cv-853S, 2014 WL 4923107 (W.D.N.Y. Sept. 30, 2014); *Davidson v. Rochester Tel. Corp.*, 558 N.Y.S.2d 1009 (N.Y. App. Div. 3d Dep't 1990); *Cohen v. Hertz Corp.*, No. 13 Civ. 1205, 2013 WL 9450421 (S.D.N.Y. Nov. 26, 2013).

New York law is consistent with federal law and the laws of many other states in this regard. Under federal law, lawsuits concerning wrongfully- collected sales tax can only be maintained against the government, and even then, such lawsuits can only be brought after

plaintiffs have exhausted their administrative remedies. *See* 26 U.S.C. § 7422(a), (f)(1). Similarly, many other states have established statutory schemes by which plaintiffs must exhaust administrative remedies for a refund before they can bring any action in the state's courts.[6]

As in all of these cases, Plaintiffs' claim is a disguised sales tax refund claim. This Court lacks jurisdiction to hear this matter because § 1140 of the Tax Law provides that jurisdiction to resolve these claims lies solely with the tax commission and its administrative process. Plaintiffs' failure to exhaust their exclusive statutory remedies is fatal to their claims, and the claims should be dismissed.

### B. Plaintiffs' Purported Class Action Is a Disguised Request for a Sales Tax Refund

"Where a plaintiff sues to recover a sum that was collected as a tax, the plaintiff has sued for a tax refund, even if the sum does not literally constitute an internal revenue tax." *Matthew v. RCN Corp.*, No. 12 Civ. 0185, 2012 WL 5834917, at *4 (S.D.N.Y. Nov. 14, 2012).

Although the Complaint refers to a "surcharge in the guise of a 'sales tax,'" Plaintiffs admit that the charge was labeled as a sales tax on their receipts. Compl. (ECF 3) ¶¶ 1, 3, 70. Plaintiffs have not, however, pled any facts to show that the charge was anything other than a

[6] Alabama (Ala. Code § 40-2A-77(c); *Rheem Mfg. Co. v. Ala. Dep't of Revenue*, 33 So. 3d 1, 7-8 (Ala. Civ. App. 2009)); Arizona (Ariz. Rev. Stat. Ann. §§ 42-118(e); 42-1251; 42-1253; 42-1254); Arkansas (Ark. Code Ann. § 26-18-507(e)(2)(A); *Carson v. Weiss*, 333 Ark. 561, 564 (1998)); California (Cal. Rev. & Tax Code § 6932); Hawai'i (Haw. Rev. Stat. Ann. § 237-37); Kansas (Kan. Stat. Ann. §§ 79-3693(c); 79-3650; 92-19-49d(c)); Massachusetts (Mass. Gen. Laws Ann. Ch. 62C §§36; 41); Nevada (Nev. Rev. Stat. Ann. §§372.630(1); 372.675; 360.245); New Mexico (N.M. Stat. Ann. §§ 7-1-22; 7-1-26); North Carolina (N.C. Gen. Stat. Ann. § 105-164.11); Ohio (Ohio Admin. Code §5703-9-07(B); Ohio Rev. Code Ann. § 5739.07; *Ashland Cty. Bd. of Commrs. v. Ohio Dep't of Taxation*, 590 N.E.2d 730, 734 (Ohio 1992)); Pennsylvania (72 Pa. Cons. Stat. Ann. § 7253); South Carolina (S.C. Code Ann. §§ 12-60-80(A); 12-60-3390); South Dakota (S.D. Cod. Laws § 10-59-17); Tennessee (Tenn. Code Ann. §§ 67-1-1801, 67-1-1804); Utah (Utah Code Ann. § 63G-3-602); Washington (Wash. Rev. Code Ann. § 82.32.180; *Oda v. State*, 44 P.3d 8, 11 (Wash. Ct. App. 2002)); West Virginia (W. Va. Code Ann. § 11-10-14).

sales tax. The clear language of § 1139 requires the tax commission to refund taxes that were erroneously or illegally collected from an individual by an entity required to collect taxes, such as a retail establishment. *Gilbert v. Home Depot, Inc.*, No. 13-cv-853S, 2014 WL 4923107, at *3 (W.D.N.Y. Sept. 30, 2014). In the alternative, if the charge was not actually a sales tax, Plaintiffs would have no cognizable claim under the tax laws—they would have simply paid a slightly higher price for prepackaged coffee.

Therefore, even if, *arguendo*, the sales taxes were collected illegally or were "surcharge[s] in the guise of a sales tax," as Plaintiffs allege, their sole remedy would still lie with the tax commission as set forth in §§ 1139-40. Any remedy the tax commission might seek from any of the Defendants in this case would be a separate administrative action to which Plaintiffs would not be parties. *See Gilbert*, 2014 WL 4923107, at *4 ("the question of whether a vendor is collecting and remitting sales taxes in accordance with state law is a question that has been entrusted to the Department of Taxation in the first instance.").

## II. Plaintiffs Have Failed to State a Claim with Respect to Dunkin' Upon Which Relief Can Be Granted

Even if all of Plaintiffs' claims were not subject to dismissal for failure to exhaust administrative remedies—and they are—Plaintiffs' claims should nevertheless be dismissed because they fail to state claims as a matter of law. Each of Plaintiffs' counts sets forth conclusory allegations or otherwise fails to satisfy this Court's pleading requirements and, therefore, should be dismissed.

### A. The Allegations that Dunkin' Sets Prices Are Directly Contradicted by Material Referred to in the Complaint

The stray statements Plaintiffs make about Dunkin' in their Complaint are not entitled to any presumption of truth by the Court because they are directly contradicted by material referred

to and embraced by the Complaint, namely, Dunkin's publicly available franchise agreements with its franchisees to which Plaintiffs refer, and a news article to which Plaintiffs cite.

"The court may consider the complaint, any exhibit attached to the complaint, materials incorporated in the complaint by reference, and documents that 'although not incorporated by reference are integral to the complaint.'" *Cohen*, 2013 WL 9450421, at *3 (quoting *Schwartzbaum v. Emigrant Mortgage Co.*, No. 09 Civ. 3848, 2010 WL 2484116, at *3 (S.D.N.Y. June 16, 2010)). "If a document relied on in the complaint contradicts allegations in the complaint, then the document, and not the allegations, controls, and the court need not accept the allegations in the complaint as true." *Id.* (citing *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 71 (2d Cir. 1998), cert. denied, 525 U.S. 1103 (1999); *Commer v. American Federation of State, County, & Municipal Employees*, 272 F. Supp. 2d 332, 335 (S.D.N.Y. 2003) (complaint is deemed to include documents that plaintiff either possessed or knew about and upon which he relied in bringing suit) (citing *Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)); *In re Merrill Lynch & Co. Research Reports Secs. Litigation*, 289 F. Supp. 2d 429, 433 n.3 (S.D.N.Y. 2003) (the court can take judicial notice of newspaper articles for the fact of their publication).

Here, Plaintiffs explicitly refer to Dunkin's franchise agreements with its franchisees. Compl. (ECF 3) ¶¶ 30-31. The franchise agreements (which are publicly available as attachments to Dunkin's Franchise Disclosure Documents filed each year with the State of New York) directly contradict Plaintiffs' conclusions that Dunkin' sets prices for its franchisees. Plaintiffs' statements are simply untrue. Three of the four Franchise Defendants are governed by franchise agreements that explicitly state that the franchisees are responsible for setting prices in

their stores. Ex. 1, Franchise Agreement (PC # 350125, 350126, 350127) ¶ 7.3 ("Except as we may be permitted by law to require a particular price, you are free to determine the prices you charge for the products you sell.") Furthermore, the franchise agreements also state that it is the responsibility of the franchisee to comply with all laws, including laws related to taxation. Ex. 1, Franchise Agreement (PC # 350125, 350126, 350127) ¶ 7.1 ("You [franchisee] agree to comply with all civil and criminal laws, ordinances, rules, regulations and orders of public authorities pertaining to the occupancy, operation and maintenance of the Restaurant and Premises."); Ex. 2, Franchise Agreement (PC # 345768) ¶ 5.1.7 ("FRANCHISEE shall comply with all civil and criminal laws, ordinances, rules, regulations and order of public authorities pertaining to the maintenance and operation of the Unit, including, but not limited to, those relating to health, safety, sanitation, employment environmental regulation and taxation.").[7]

The allegations concerning Dunkin' are further contradicted by a March 2013 news article to which Plaintiffs cite in paragraph 52 of their Complaint. The article quotes a customer saying "I realize the price of a Box O' Joe can vary from store to store." Ex. 3, Karin Price Mueller, "Bamboozled: Coffee Tax Creates Quite a Stir," at 1. Another customer is quoted about his complaint to Dunkin' Brands Inc. after being charged a sales tax for pre-packaged coffee, saying "I was informed that this was a franchise and while they had the company name,

---

[7] The franchise agreements also specify that there is no fiduciary relationship between Dunkin' and the Franchise Defendants. Ex. 1, Franchise Agreement (PC# 350125, 350126, 350127) ¶ 16.1 ("You are an independent contractor of ours, and not our agent, partner or joint venturer. Neither party has the power to bind the other. Nothing in this Agreement contemplates a fiduciary relationship. Neither party is liable for any act, omission, debt or any other obligation of the other …"); Ex. 2, Franchise Agreement (PC# 345768) ¶ 12.0 "This agreement does not constitute FRANCHISEE an agent, legal representative, joint venturer, partner, employee, or servant of FRANCHISOR or its parent, subsidiaries and affiliated entity(ies) for any purpose whatsoever. … The parties agree that this Agreement does not create a fiduciary relationship between FRANCHISOR or its affiliated entity(ies) and FRANCHISEE."). *See also Marcella & Co. v. Avon Products, Inc.*, 282 A.D.2d 718, 719 (N.Y. App. Div. 2d Dep't 2001) ("There is no fiduciary relationship between a franchisee and a franchisor.").

they could do things they wanted to do without corporate permission …." *Id*. at 2. The article's author later confirmed the two customers' impressions about the variation among Dunkin' franchises, explaining "Dunkin' Donuts, which is based in Canton, Mass., said New Jersey's stores are owned and operated by individual franchisees, who are expected to comply with all applicable state and federal laws." *Id.* Furthermore, one of the main points of the article is that customers have had different experiences paying sales taxes at different Dunkin' stores. *Id*. This directly contradicts Plaintiffs' conclusory and unsupported assertion that Dunkin' sets the prices for franchisees' coffee. Because the documents referred to in the Complaint directly contradict the conclusory statements against Dunkin', the documents control over Plaintiffs' contentions. Plaintiffs have failed to state a claim under which they would be entitled to relief as to Dunkin' because the documents referred to in their Complaint show that Dunkin' does not set prices or sales taxes for its franchisees.

### B. Plaintiffs' Allegations that Dunkin' Sets Prices Are Conclusory Under *Iqbal* and *Twombly*

Even if Plaintiffs' sparse statements about Dunkin' were not directly contradicted by material embraced by their Complaint, the allegation that Dunkin' sets prices, fees, and taxes for the sale of its franchisees' prepackaged coffee is not entitled to any presumption of truth. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Plaintiffs allege that Dunkin' sets prices, fees, and taxes for prepackaged coffee—these are the "hooks" by which Plaintiffs bring Dunkin' into this case; however, they are simply conclusions framed as factual allegations. First, the Complaint alleges "[Dunkin' Brands Inc.] sets and controls the price and fees its franchise members charge for their products, including pre-packaged coffee." Compl. (ECF 3) ¶ 15. Later, Plaintiffs allege that "[a]s part of the licensing franchisee agreement, Defendant Dunkin' Brand, [sic] Inc. sets and controls the prices and taxes to be assessed by each franchisee store …."[8] Compl. (ECF 3) ¶ 31.[9]

Plaintiffs' bald assertions are a formulaic recitation of their theory of liability against Dunkin'—as franchisor—in an attempt to allege that Dunkin' had involvement in the sales transactions and assessment of the taxes at issue—which Dunkin' did not. As to the first assertion, it is a conclusion that is devoid of any factual foundation whatsoever. The second assertion is contradicted by the language of the franchise agreements and thus is clearly false. And specifically, the allegation that Dunkin' "controls" its franchisees' prices, fees, and taxes is a "naked assertion" devoid of any "further factual enhancement." As such, Plaintiffs' unsupported (and false) conclusions are not entitled to any presumption of truth. Plaintiffs do not allege any actual facts supporting their theory that Dunkin', the franchisor, was involved in the sales transactions or the charging of taxes in any manner whatsoever. Therefore, Plaintiffs have failed to state a plausible claim to relief as to Defendant Dunkin' Brands.

### C. Plaintiffs Fail to State a Claim Pursuant to N.Y. General Business Law § 349

[8] Plaintiffs also claim that Dunkin' "programs [prices] into each cash register, including the cash registers in New York." Compl. (ECF 3) ¶ 31. Even if this were true—which it is not—Plaintiffs never allege how this would lead to Dunkin's control over its franchisees' sales taxes.

[9] As discussed in more detail below, this assumption is false. Dunkin' should not, however, have to spend perhaps hundreds of thousands of dollars in discovery to establish the falsity of such bald, conclusory statements. The purpose of *Iqbal* and *Twombly* is to force Plaintiffs to provide at least some factual basis to support their claims, which Plaintiffs have failed to do here.

Plaintiffs cannot show that they have suffered any injury in purchasing Dunkin's pre-packaged coffee other than a small pecuniary loss. Thus they have not sustained "actual injury" under New York General Business Law § 349. Without injury, Plaintiffs have no cause of action under § 349, and therefore this claim should be dismissed.

To state a claim under New York General Business Law § 349, Plaintiffs must allege: (1) the challenged act or practice was consumer-oriented; (2) the act or practice was misleading in a material way; and (3) plaintiff suffered injury as a result of the deceptive act. *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). To prove the third element, Plaintiffs must prove "actual" injury to recover under the statute. *Id.* at 612; *Small v. Lorillard Tobacco Co.*, 720 N.E.2d 892, 897 (N.Y. 1999). New York courts have held that allegations plaintiffs suffered pecuniary loss as a result of a defendant's misrepresentation are insufficient to plead "actual injury" for a § 349 claim. That is, "'consumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices [have not] suffered an injury under General Business Law § 349.'" *See Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012) (quoting *Lorillard Tobacco Co.*, 720 N.E.2d at 898); *see also Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (N.Y. App. Div. 3d Dep't 2007) (rejecting argument that consumer who bought product he would not have purchased absent seller's deceptive commercial practices suffered injury within meaning of § 349); *Pelman v. McDonald's Corp.*, 272 F.R.D. 82, 92-93 (S.D.N.Y. 2010).

Accordingly, in the context of consumer goods, plaintiffs must allege not only that they paid more than they believe they should have, but also that the product they received was inferior in some manner to what the defendant advertised. *See, e.g., Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) (citing *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89

(S.D.N.Y. 2014) (finding a sufficiently pled § 349 injury where plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat); *Lazaroff v. Paraco Gas Corp.*, No. 28633/09, 2011 WL 9962089, at *6 (N.Y. Sup. Ct. Feb. 25, 2011) (finding a sufficiently pled § 349 injury where plaintiff alleged that he would not have paid the price charged for a "20 pound" propane cylinder had he known it contained only 15 pounds of propane)). *See also Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 286, 292-93 (S.D.N.Y. 2015) (holding that plaintiffs adequately alleged injury in § 349 action because they asserted they were "damaged in the amount of the purchase price of the Cold-EEZE Products, i.e., *the difference in value* between the Cold-EEZE Products as advertised and the Cold-EEZE Products as actually sold[]" because "Plaintiffs allege Defendants made false representations in marketing Cold-EEZE as effective in reducing the duration and severity of the common cold." (emphasis in original)).

Here, Plaintiffs fail to allege that they were injured beyond a price increase as a result of the alleged "materially misleading or deceptive business practice" by Dunkin'. Plaintiffs instead assert the bare allegation that "Defendants have engaged in deceptive practices by assessing a surcharge on the sale of pre-packaged coffee and/or other tax-exempt products under the guise of a 'sales tax.'" Compl. (ECF 3) ¶ 70. Setting aside the fact that Dunkin' did not assess any surcharge or tax in the instant transactions and Plaintiffs have failed to adequately plead to the contrary, Plaintiffs here have not alleged that the coffee they purchased from Franchise Defendants was defective in any way. Rather, they have only alleged that they paid more for the product than they should have. Without more, Plaintiffs' allegation fails to state an "actual injury" under § 349, and their claim should be dismissed.

**D. Plaintiffs' Claim for Breach of Contract Fails to State a Claim**

Because Plaintiffs cannot point to a contract that exists between Plaintiffs and Dunkin', their breach of contract claim should be dismissed. Under New York law, to be entitled to damages for breach of contract, a plaintiff must plead and prove: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 83 A.D.3d 804, 806 (N.Y. App. Div. 2d Dep't 2011); s*ee also Patmos Fifth Real Estate Inc. v. Mazl Bldg. LLC*, No. 108421/11, 2013 WL 3942115, at *8 (N.Y. Sup. Ct. July 29, 2013) (dismissing claim for breach of contract when plaintiff failed to allege terms breached by defendants). Indeed, "[a] cause of action for breach of contract will be dismissed if it fails to allege the breach of a specific contractual provision." *J&L Am. Enterprises, Ltd. v. DSA Direct, LLC*, No. 401937/05, 2006 WL 216680, at *6 (N.Y. Sup. Ct. Jan. 27, 2006) (dismissing claim for breach of contract when plaintiff failed to allege the specific contractual provision upon which the claim was based). *See also Richstone v. Everbank Reverse Mortg. LLC*, No. 106444/08, 2009 WL 6303024, at *3 (N.Y. Sup. Ct. July 8, 2009) (dismissing breach of contract claim for failure to allege the specific provision upon which liability was predicated).

Further, a plaintiff "may not assert a cause of action to recover damages for breach of contract against a party who is not in privity" of contract. *Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 215 (S.D.N.Y. 1997) (quotation omitted). As such, plaintiffs must affirmatively allege the existence of privity of contract. *See In re Griffin*, Bankr. No. 10-22431-RDD, 2010 WL 3928610, at *3 (Bankr. S.D.N.Y. Aug. 31, 2010) ("Certainly there's no allegation of ... privity in the complaint. Therefore, [defendant] cannot be liable for breach of contract absent such an allegation *or an allegation that it was acting as the agent for someone who was in privity and that privity can be imputed to it, which, again, is not alleged.*" (emphasis

added)). Because franchisors and franchisee customers typically share no privity of contract,[10] Plaintiffs here are especially beholden to allege such privity. Finally, "[i]n the absence of a contract … , no duty of good faith can be implied." *Marcella & Co. v. Avon Prods.*, 282 A.D.2d 718, 718 (N.Y. App. Div. 2d Dep't 2001).

Here, Plaintiffs allege that "Defendants' misconduct constitutes a material breach of contract, and a breach of the implied covenant of good faith and fair dealing." Compl. (ECF 3) ¶ 73. In so alleging, Plaintiffs attempt to create a contract where none exists—thereby further illustrating that Dunkin' was not a party to the instant transactions. Nowhere in Plaintiffs' Complaint do Plaintiffs point to a term of the alleged "contract" between the parties that Dunkin allegedly breached. Nor do Plaintiffs allege—because they cannot allege—that Dunkin' shared any privity of contract with Franchise Defendants regarding their customers. Such a failure to allege the breached terms of the contract, the existence of a contract, and any privity shared by Defendants warrants dismissal of Plaintiffs' claim.

### E. Plaintiffs' Equitable Claim for Unjust Enrichment Fails

Because Plaintiffs cannot point to any benefit that Dunkin' unjustly received, their unjust enrichment claim should be dismissed. Unjust enrichment under New York law falls under the umbrella of quasi-contract. *See* E. Allen Farnsworth, *Contracts* § 2.20, at 103-04 (2d Ed. 1990); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 905 (2d Cir. 1997) ("[U]nder the quasi-contractual doctrine of unjust enrichment, courts may infer the existence of an implied

[10] Indeed, the New York legislature has declared privity of contract between only one type of franchisor and their franchisees' customers. *See* N.Y. Gen. Bus. Law § 394-d (McKinney 1984) (governing instruction in dancing or other "physical or social skills"); *see also Dinberg v. Arthur Murray, Inc.*, 39 A.D.2d 622 (N.Y. App. Div. 3d Dep't 1972) (permitting a defunct franchisee's customer to recover from dancing instructor franchisor under the statute); *Totten v. Saionz*, 38 A.D.2d 630 (N.Y. App. Div. 3d Dep't 1971) (upholding and applying the statute against a franchisor whose franchisee breached its dancing lesson contracts with the plaintiff). In the absence of such statutory mandate, black letter law prevails.

contract to prevent one person who has obtained a benefit from another from unjustly enriching himself at the other party's expense."); *Clark–Fitzpatrick, Inc. v. Long Island R.R.*, 516 N.E.2d 190, 193 (N.Y. 1987). An unjust enrichment claim under New York law must contain the following elements: (1) the defendant was enriched; (2) enrichment was at the plaintiff's expense; and (3) the defendant's retention of the benefit would be unjust. *See Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1472 (S.D.N.Y. 1992). The third element is satisfied when the circumstances are such "that equity and good conscience require defendant to make restitution." *Violette v. Armonk Associates, L.P.*, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995).

Here, Plaintiffs allege that Defendants illegally surcharged customers in the guise of a "sales tax." While the Franchise Defendants could arguably have unjustly benefitted from an illegal sales tax (though such a tax would typically pass through the franchisee to the state), Dunkin' could not have so benefitted. Simply put, Dunkin' did not assess or collect the taxes. Dunkin', as franchisor, is only entitled to a percentage of its franchisees' gross sales. Franchise Agreements 350125, 350126, and 350127 define "gross sales" as follows:

> 5.5 "Gross Sales" means all revenue related to the sale of approved products and services through the operation of the Restaurant, but *does not include* money received for the sale of stored value cards and deposited into a central account maintained for the benefit of the System; *taxes collected from customers on behalf of a governmental body*; or the sale of approved products to another entity franchised or licensed by us for subsequent resale. All sales are considered to have been made at the time the product is delivered to the purchaser, regardless of timing or form of payment. …

(Emphasis added.) Franchise Agreement 345768 defines "gross sales" as follows:

> G. "Gross Sales" means and includes all revenue from the sale of all products and services and all other income of every kind and nature related to the Unit, whether for cash, by redemption of gift certificates or for credit, regardless of collection; provided, however, "Gross Sales" *does not include* the incidental sales of gift certificates or newspapers, incidental receipts from pay telephones, or *any sales taxes or other taxes FRANCHISEE collects from customer for transmittal to the appropriate taxing authority.*

(Emphasis added.) Thus, because Dunkin', as franchisor, is not entitled to collect any sales tax collected by franchisees, it could not have unjustly benefitted from franchisees' collection of improper sales taxes.[11] Not surprisingly, Plaintiffs have not alleged—because they cannot allege—that Dunkin' received any specific monetary benefit from the alleged transactions. Nor have they alleged any other theories that would make Dunkin' liable for unjust enrichment.

**F. Plaintiffs' Claim for Negligence Fails**

Because Dunkin' owed Plaintiffs no duty, their negligence claim should also be dismissed. In order to successfully plead a claim for negligence, Plaintiffs must allege "(1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) injury substantially caused by that breach." *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). Plaintiffs' negligence claim fails because they have not shown that Dunkin' owed them any duty to protect against improper payment of sales tax. First, they have failed to show that there is any duty running from any of the Defendants to the Plaintiffs, much less a duty running from Dunkin', the franchisor, to the customers of the Franchise Defendants. Second, for negligence purposes, there is no duty to protect from economic loss in business transactions.

A plausible negligence claim must allege that the defendant had an identifiable duty to the plaintiff. "Absent a duty running directly to the injured person there can be no liability in damages, however careless the conduct or foreseeable the harm." *532 Madison Ave. Gourmet Foods, Inc. v. Tishman Construction Corp.*, 750 N.E.2d 1097, 1101 (N.Y. 2001). Plaintiffs have not alleged that Dunkin' has any duty running directly to them. Plaintiffs make the conclusory statement that "Defendants breached a duty to Plaintiffs and the Class members by failing to

[11] To the extent Plaintiffs imply that Dunkin's royalties somehow derive from the Franchise Defendants' "surcharge in guise of a sales tax," this is speculation upon speculation and not alleged within the four corners of Plaintiffs' complaint.

properly train their agents, resulting in the aforementioned damages." Compl. (ECF 3) ¶ 82. However, Plaintiffs do not allege which Defendants allegedly had such a duty or which "agents" allegedly were improperly trained (or in what way those "agents" were improperly trained). In fact, Dunkin's alleged duty is nowhere to be found in the franchise agreements nor is it supported by case law.

There is no agency or fiduciary relationship between a franchisor and a franchisee under the governing franchise agreements or under New York law. *See* footnote 6, *supra*. In fact, a New York federal court has specifically found that Dunkin' does not have a duty to train its franchisees' employees or make day-to-day operational decisions. A judge in the Eastern District of New York found that "[a]lthough the control that DD [(*i.e.*, franchisor Dunkin')] exercises under the franchise agreement is considerable, it is primarily designed to maintain uniform appearance among its franchisees and uniform quality among their products and services to protect and enhance the value of the Dunkin' Donuts trademark. [The franchisee] remains solely responsible for hiring, firing, and training its employees and for making all day-to-day decisions necessary to run the business." *Wu v. Dunkin' Donuts, Inc.*, 105 F. Supp. 2d 83, 91 (E.D.N.Y. 2000), *aff'd* 4 Fed. Appx. 82 (2d Cir. 2001). Dunkin's franchise agreements speak only to operational training. It would be difficult if not impossible for a nationwide franchisor to fully understand and monitor each state and locality's tax laws and regulations. Therefore, as is the case with most franchisors, Dunkin's franchise agreements charge each independent franchisee with understanding and obeying applicable tax laws. Ex. 1, Franchise Agreement (PC # 350125, 350126, 350127) ¶¶ 7.1, 16.1; Ex. 2, Franchise Agreement (PC # 345768) ¶¶ 5.1.7, 12.0.

Furthermore, as a matter of law, the Franchise Defendants' sole duty related to taxes is to the State of New York Tax Commission, requiring that all sales tax be collected and paid over to the State, even if they are in excess of the correct amount. *See Matter of Saltzman v. N.Y. State Tax Comm'n*, 101 A.D.2d 910, 911 (N.Y. App. Div. 3d Dep't 1984). Plaintiffs have not alleged that any Defendants had a duty to protect them from the improper payment of sales tax.

Finally, Plaintiffs purchased coffee from the Franchise Defendants in purely arms-length transactions. No negligence-based duty to protect from economic loss can arise from such transactions. "[A]n arms-length commercial transaction, without more, cannot give rise to a duty of care [unless] a special relationship exists between the parties by virtue of the defendant's 'unique or specialized expertise,' or the defendant's 'special position of confidence and trust with the injured party.'" *Banco Indus. de Venezuela, C.A. v. CDW Direct, LLC*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012) (*quoting M & T Bank Corp. v. LaSalle Bank Nat'l Ass'n*, 852 F. Supp. 2d 324, 337 (W.D.N.Y. 2012)); *Sotheby's, Inc. v. Minor*, No. 08 Civ. 7694(BSJ), 2009 WL 3444887, at *9 (S.D.N.Y. Oct. 26, 2009) ("In arms-length commercial transactions, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary circumstances" and a court need not credit "mere legal conclusions that are dressed up as factual allegations" that a defendant held fiduciary responsibilities).

Plaintiffs have failed to allege any duty owed to them by Dunkin'; therefore, their claim for negligence must be dismissed.

### G. The Economic Loss Doctrine Bars Plaintiffs' Claims for Fraud and Negligence

Because Plaintiffs plead purely economic loss, their claims for fraud and negligence should be dismissed. "The general rule under New York law is that economic loss is not recoverable under a theory of negligence." *Am. Tel. & Tel. Co. v. N.Y.C. Human Res. Admin.*,

833 F. Supp. 962, 982 (S.D.N.Y. 1993) (dismissing negligence claims for the "purely economic loss" of long distance telephone charges). *See also Cnty. of Suffolk v. Long Island Lighting Co.*, 728 F.2d 52, 62 (2d Cir. 1984) ("New York law holds that a negligence action seeking recovery for economic loss will not lie."). Nor is economic loss recoverable under Plaintiffs' fraud theory. *See Shred-It USA Inc. v. Mobile Data Shred*, 222 F. Supp. 2d 376, 379 (S.D.N.Y. 2002) (dismissing fraud claims under economic loss doctrine and noting that "[f]or claims alleging only economic loss, … the usual means of redress is an action for breach of contract; a tort action for economic loss will not lie").

The crux of Plaintiffs' negligence and fraud claims is that Dunkin' either negligently or fraudulently charged them sales tax on pre-packaged coffee, which resulted in Plaintiffs paying more sales tax than they were legally obligated to pay. Compl. (ECF 3) ¶¶ 1-3, 82, 84. Even if Dunkin' had actually "charged [Plaintiffs] sales tax," which it did not, Plaintiffs' alleged damages are purely pecuniary and economic. Plaintiffs allege no damages to person or property. Therefore, Plaintiffs' claims for negligence and fraud are barred and fail as a matter of law on this additional basis.

### H. Plaintiffs Fail to Allege Fraud with Particularity

Plaintiffs have indiscriminately pleaded that Defendants together engaged in fraudulent behavior without specifying the actions taken by each. For this reason, their fraud claim should be dismissed. Regardless of whether Plaintiffs' fraud claim is alleged against Dunkin' or the Franchise Defendants, Plaintiffs fail to sufficiently allege fraud's *prima facie* elements. "In an action to recover damages for fraud, the plaintiff must prove a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the

misrepresentation or material omission, and injury." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1373 (N.Y. 1996); *see also Jones v. Bank of Am. Nat'l Ass'n*, No. 31990/2008, 2013 WL 4017344, at *7 (N.Y. Sup. Ct. July 29, 2013) (dismissing claim for fraud for failure to allege the claim with specificity as to when or where any of the alleged misstatements were made). Plaintiffs' allegations of fraud must be stated with particularity pursuant to Federal Rule of Civil Procedure 9(b). *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); *New World Trading Co. v. Avshalomov*, No. 11 Civ. 6219, 2012 WL 4378055, at *2 (S.D.N.Y. Sept. 24, 2012). To survive a motion to dismiss, Plaintiffs must (1) detail the statements or omissions that the plaintiff contends are fraudulent; (2) identify the speaker; (3) state where and when the statements or omissions were made; and (4) explain why the statements or omissions are fraudulent. *Harsco v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996).

Although "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally," Fed R. Civ. P. 9(b), this leeway is not a "license to base claims of fraud on speculation and conclusory allegations." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation marks and citation omitted). "[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent," which may be established "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Here, Plaintiffs allege that "Defendants' willful and material misrepresentations to Plaintiffs and the Class, which Plaintiffs and the Class reasonably relied upon, resulted in the

aforementioned damages." Compl. (ECF 3) ¶ 84. Plaintiffs fail to allege any facts giving "rise to a strong inference of [Dunkin's] fraudulent intent." Moreover, their fraud allegations fail Rule 9(b)'s particularity requirement because they do not identify a specific representation that is alleged to be false, do not identify the speaker of the representation, do not state when the representation was made or when Plaintiffs allegedly relied upon it, and do not identify what information, specifically, is alleged to be false or omitted. In short, the allegations provide Dunkin' with no notice of what Dunkin' allegedly misrepresented or omitted, and therefore provide Dunkin' no meaningful opportunity to investigate or defend itself against the claim.[12]

Further, plaintiffs who allege fraud against multiple defendants must provide sufficient facts to inform each defendant of the nature of his alleged participation in the fraud. *Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 316 (S.D.N.Y. 2011). A plaintiff may not lump separate defendants together in vague and collective fraud allegations to satisfy the requirements for pleading fraud with particularity, but rather must inform each defendant of the nature of his alleged participation in the fraud. *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 247 (S.D.N.Y. 2011). In a case involving multiple defendants, plaintiffs alleging fraud must plead circumstances providing a factual basis for scienter, when required, for each defendant; guilt by association is impermissible. *S.E.C. v. Lee*, 720 F. Supp. 2d 305, 321 (S.D.N.Y. 2010). This can consist of allegations as to who "possessed … knowledge" of the fraud, "when and how they obtained [that] knowledge," or even why they "should have known" of the fraud. *Meijer, Inc. v. Ferring B.V. (In re DDAVP Direct Purchaser Antitrust Litig.),* 585 F.3d 677, 695 (2d Cir. 2009) (internal citations omitted).

[12] Furthermore, Plaintiffs' allegations do not even provide any plausible scenario under which Dunkin' would have been in the position to make fraudulent statements or omissions to its franchisees' customers.

Here, Plaintiffs indiscriminately state that Defendants—that is, both franchisor and franchisees—committed fraud in surcharging customers in the "guise of a sales tax." Plaintiffs fail to allege which Defendant did what, how, when, and where. Dunkin' has a contractual relationship with Franchise Defendants in which it has agreed to allow independent businesspersons to utilize its intellectual property for a period of time to independently own and operate their businesses in exchange for royalty payments. The existence of such a franchise relationship does not presuppose any sort of fraudulent arrangement among Defendants; however, it does establish that Dunkin' was not involved in the transactions between its franchisees and their customers. The onus is on the Plaintiffs to aver not only that such an arrangement exists, but also its nature, and Plaintiffs have failed to do so here. Plaintiffs have failed to allege their fraud claim with particularity generally and with particularity regarding each individual Defendant's role in the alleged fraud.

**CONCLUSION**

In conclusion, Dunkin' respectfully requests that this Court issue an Order dismissing every count of the Complaint for want of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Dated: April 19, 2016

Respectfully submitted,

Ronald D. Degen
O'ROURKE & DEGEN, PLCC
225 Broadway
Suite 715
New York, NY 10007
Telephone: (212) 227-4530
Facsimile: (212) 385-9813
rdegen@odlegal.com

/s/ Eric L. Yaffe
Eric L. Yaffe (*pro hac vice*)
Virginia E. Davis Horton (*pro hac vice*)
Whitney A. Fore (*pro hac vice*)
GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
Suite 700 – The Watergate
600 New Hampshire Avenue, NW
Washington, DC 20037
Telephone: (202) 295-2200
Facsimile: (202) 295-2250
eric.yaffe@gpmlaw.com
virginia.horton@gpmlaw.com
whitney.fore@gpmlaw.com

*Attorneys for Defendant Dunkin' Brands, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system on April 19, 2016, will be sent electronically to the registered participants as identified on the NEF.

/s/ Eric L. Yaffe
Eric L. Yaffe